HODDER, Assignee, *v.* THE KENTUCKY & GREAT EASTERN RY. Co. and others.*

(*Circuit Court, D. Kentucky.*  June, 1881.)

1. CORPORATIONS—POWER OF BOARD OF DIRECTORS TO ISSUE MORTGAGE BONDS—CONCURRENCE OF STOCKHOLDERS.

Where the general management and control of the property, business, and affairs of a corporation were vested in the board of directors and president; and the corporation was given power by the charter to issue and sell bonds and execute a mortgage to secure the same; and the charter required the concurrence of the stockholders to authorize a different measure, (consolidation with another company,)—*held,* that the board of directors and president had the power, without the concurrence of the stockholders, to authorize the issue of bonds and the execution of a mortgage upon the property of the company to secure them.

2. SAME—ACKNOWLEDGMENT OF MORTGAGE BY PRESIDENT OUT OF THE STATE.

The corporation was organized under the laws of Kentucky, and its property located there. *Held,* that a mortgage of its property could be legally acknowledged by the president of the company in Ohio.

3. SAME—MORTGAGE—NOTICE OF FORECLOSURE—BRINGING SUIT.

The charter provided that "foreclosure" should not take place until 90 days' notice had been given by publication. *Held,* that such notice applied to the foreclosure itself, not to the bringing of a suit for foreclosure.

4. MORTGAGE OF RAILROAD—CONSTRUCTION OF TERMS—WHAT PROPERTY COVERED—BRANCH ROAD—POWER TO PURCHASE ANOTHER ROAD—ULTRA VIRES—AFTER-ACQUIRED PROPERTY.

On demurrer to the cross-bill of the Farmers' Loan & Trust Company it appeared that the Kentucky & Great Eastern Railway Company, in 1872, executed a mortgage to the Farmers' Loan & Trust Company upon its entire line of railroad extending from Newport, Kentucky, along the southern bank of the Ohio river, to Catlettsburg, Kentucky, "as the same is now or may hereafter be located or constructed." The railroad company, at that time, had no power to build such a line of road, unless it came within the power to build branches to its main line. It was alleged that in July, 1871, the owners of the Maysville & Big Sandy Railroad sold that road, with all its rights and franchises, to the Kentucky & Great Eastern Company, and that on the fifteenth of June, 1873, said sale was confirmed and ratified by said owners. The Kentucky & Great Eastern Company had the power, under its charter, upon the assent of the holders of a majority in value of its stock, to purchase and hold any other road in

*Reported by J. C. Harper, Esq., of the Cincinnati bar.

out of the state of Kentucky. *Held*, (*a*) that, under the facts alleged and the terms of the mortgage, said line from Newport to Catlettsburg was not a *branch* of a road which said Kentucky & Great Eastern Company was authorized to build; (*b*) that the Kentucky & Great Eastern Company had no right, so far as the cross-bill shows, to acquire said Maysville & Big Sandy Railroad without the concurrence of the stockholders of the former, and such concurrence is not alleged.

*Held, further*, that, under the allegations of the cross-bill and the terms of the mortgage, said Maysville & Big Sandy Railroad was not intended to be conveyed as after-acquired property.

*Quære*, the Kentucky & Great Eastern Company having, at the time of the execution of the mortgage, no authority to acquire said Maysville & Big Sandy Railroad, whether, although it might have been intended so to convey said latter-named railroad as after-acquired property, it would have passed under said mortgage, the same being *ultra vires*.

5. PRACTICE—REPLEADER AFTER REMOVAL FROM STATE COURT.

In Equity. On demurrers to cross-bill of Farmers' Loan & Trust Company, praying a foreclosure of its mortgage.

*Wm. H. Wadsworth*, of Maysville, Ky., and *Perry & Jenney*, of Cincinnati, for M. & B. S. Ry. Co. and Wadsworth and associates.

I. The Kentucky & Great Eastern Railway Company had no right or title to the franchise or property of the Maysville & Big Sandy Railway Company to pledge to Farmers' Loan & Trust Company.

II. The Kentucky & Great Eastern Railway Company did not mortgage the franchise or property of Maysville & Big Sandy Company and the terms of the mortgage do not embrace the same. (*a*) Only the Kentucky & Great Eastern Railway Company's *own line*, acquired or to be acquired, is embraced in the mortgage. (*b*) A railroad not then acquired by that company, and which it had not then power to construct, will not pass by the mortgage, as after-acquired property. Jones on Rail. Secur. §§ 104–107; *Meyer* v. *Johnston*, 53 Ala. 237, 331; *Shamokin Val. Ry. Co.* v. *Livermore*, 47 Pa. St. 465; *Farmers' L. & T. Co.* v. *Com. Bank*, 11 Wis. 207; 15 Wis. 424; *Dinsmore* v. *Racine, etc., Ry. Co.* 12 Ill. 649; *Walsh* v. *Barton*, 24 Ohio St. 28; 1 Jones on Mortgages, §§ 156, 157. When right of action on contracts will pass. Jones, Rail. Secur. § 108; *Mil., etc., Ry. Co.* v. *Mil., etc., Ry. Co.* 20 Wis. 174.

III. As after-acquired property, the mortgagee would take it subject to equities. 1 Jones on Mortgages, § 158, and notes; *Fosdick* v. *Schall*, 99 U. S. 250; *U. S.* v. *N. O. Ry. Co.* 12 Wall. 362; *Beall* v. *White*, 104 U. S. 382.

*C. L. Raison, Jr.*, of Cincinnati, for plaintiff and Ken. & Gt. East. Ry. Co.

*Sage & Hinkle*, of Cincinnati, for the Farmers' Loan &
Trust Co. and bondholders.

I. As to the validity of the mortgage. (*a*) The board of directors could
execute the mortgage without the assent of a majority of the stock-
holders. The assent of stockholders required by section 43 is as to an-
other and a different transaction. *Expressio unius, exclusio alterius*, etc.,
applies. *Watkins* v. *Wassel*, 20 Ark. 410; *Spring* v. *Collector, etc.*, 78 Ill.
101; *Burke* v. *Monroe Co.* 77 Ill. 610. As to power of directors to mort-
gage, see Jones, Rail. Secur. § 84; *Hatch* v. *Coddington*, 95 U. S. 48–55;
*McCurdy's Appeal*, 65 Pa. St. 290, 292, 293, 297; *Hendee* v. *Pinkerton*, 14
Allen, 381, 387. (*b*) Authority to mortgage after-acquired property. Jones,
Rail. Secur. § 121 *et seq*; 1 Wall. 254; 65 Pa. St. 290, 292; 11 Wall. 459.
(*c*) Acknowledgment by president, and out of the state, is good. *Galves-
ton R. Co.* v. *Cowdrey*, 11 Wall. 459; *Bank of Aug.* v. *Earle*, 13 Pet. 521; 7
Bush, 123; Jones, Rail. Secur. § 86; 4 Allen, 80, 87; 95 U. S. 710. (*d*) As
to power to pledge, etc., bonds, when charter confers power to issue and
sell, see *Duncan, etc.*, v. *N. Y., etc., Ry. Co.* N. Y. Court of Appeals, (not
yet reported;) *Hennicic* v. *Supervisors, etc., Co.* 6 Bissell, 138; *Curtis* v.
*Leavitt*, 15 N. Y. 66. (*e*) Authority to mortgage franchises. Jones, Rail.
Secur. § 10; *Bardstown* v. *Low. R. Co.* 4 Met. 199. State only has right
to object. *McAllister* v. *Plant*, 54 Miss. 106.

II. As to the property embraced in the mortgage. (*a*) Mortgage conveys
line of road up river from Newport to Catlettsburg; immaterial whether
main stem or branch, or part of either. (*b*) Kentucky & Great Eastern
Company had a right to build branches anywhere in Kentucky. Char-
ter, §§ 10, 13. (*c*) The contract of July 15, 1871, and its acceptance,
vested the interests of Wadsworth and associates in the Kentucky &
Great Eastern Company. As to lien on after-acquired property: *Dun-
ham* v. *Ry. Co.* 1 Wall. 254; *Gal. R. Co.* v. *Cowdrey*, 11 Wall. 459;
*U. S.* v. *N. O. R. Co.* 12 Wall. 362; 99 U. S. 285; *Hutchins* v. *Shaw*, 6
Cush. 58.

BARR, D. J. This cause is submitted on the demurrers to
the cross-bill of the Farmers' Loan & Trust Company. Al-
though other questions were argued, the only questions raised
are those arising on the demurrers to the cross-bill.

The objection that the board of directors could not author-
ize the execution of the mortgage to the Farmers' Loan &
Trust Company, but it must have been authorized by the
stockholders, is not well taken.

The charter of the Kentucky & Great Eastern Railroad
Company gave the board of directors and president the gen-
eral management and control of the property, business, and
affairs of said company, (section 7;) and the fact that by
other sections, the railroad company could only do certain

things with the concurrence of a majority of the stockholders, (sections 41 and 43,) does not tend to prove that the directors could not exercise the other powers granted the corporation.

The forty-third section provides that—

Said railway company (the holders of a majority of the stock therein concurring) may agree on terms for consolidating said company with any other railroad company, etc.; and the next section (44) provides that said company may issue and sell the coupon bonds of said company; and the forty-fifth section provides that, to secure the prompt payment of the interest and principal of said bonds, said company may execute a mortgage or deed of trust; but in neither section is it provided that the stockholders must concur.

It is quite clear, from these and other sections of the charter, that the directors and president of the company were authorized to issue mortgage bonds and secure them upon the property of the company. Jones on Railroad Securities, § 84.

The mortgage could be legally acknowledged by the president of the company in Ohio, and it seems to be in proper form. Jones on Railroad Securities, §§ 84, 86; *Kelly* v. *Calhoun*, 95 U. S. 710; *Marlin* v. *Mobile & Ohio R. Co.* 7 Bush, 177; 11 Wall. 476.

The allegation of the cross-bill as to the issuing of the bonds, and that they are outstanding in the hands of *bona fide* holders, is sufficient. If these bonds were delivered in payment for work done and materials furnished, it was equally as good as if they had been sold for cash—money in hand.

The 90 days' notice required by the forty-seventh section of the charter * does not apply to the bringing of the suit for foreclosure, but to the foreclosure itself.

The charter, section 45, gives the authority to secure the mortgage bonds by conveying "the said railroad and its property franchises." It is unnecessary to decide on these demurrers the exact meaning of these words. It certainly gave the company the right to mortgage its property then owned, and that which it might thereafter acquire by its existing charter.

---

* "Section 47. * * Foreclosure shall not take place until 90 days after publication of notice of the commencement of proceedings to that end shall have been made," etc.—[Rep.

The language of the mortgage embraces not only the property then owned by the Kentucky & Great Eastern Railroad Company, but also that which the company might thereafter acquire.

This company did not, at the date of this mortgage or at the time of its acceptance, March 5, 1872, have authority to build and run a railroad from the city of Newport, in the State of Kentucky, "upon, along, and near the southern bank of the Ohio river to a point in said state line between the states of Kentucky and West Virginia at or near Catlettsburg, Boyd county, Kentucky," unless that authority can be derived from the authority given the company to build branches to its main stem of road.

There is nothing in the mortgage, nor is there any allegation in the cross-bill, which indicates that any part of this line—that described in the mortgage—is a branch to the company's "main trunk road;" on the contrary, the mortgage describes the line as "our main line." The fair inference—indeed, the irresistible conclusion from the mortgage and the allegations of the cross-bill—is that the company never even located another line east of Maysville, hence the line east of Maysville, upon, along, and near the southern bank of the Ohio to a point at or near Catlettsburg, cannot, by any reasonable construction, be a branch of a road which was authorized to be constructed in counties other than Mason, Lewis, Greenup, and Boyd, and which, as far as this record shows, had not been located.

The line as described would run through the counties of Mason, Lewis, Greenup, and Boyd, and it seems from the cross-bill included the line of the Maysville & Big Sandy Railroad. It alleges that W. H. Wadsworth and others were, on the fifteenth of July, 1871, the absolute and sole owners of all the property, rights, and franchises of the Maysville & Big Sandy Railroad Company, and that they, on the fifteenth of July, 1871, entered into a contract with the Kentucky & Great Eastern Railroad Company, whereby they sold to said company all the said property, rights, and franchises and interests of the said Maysville & Big Sandy Railroad

Company, and that subsequently, and on or about the fifteenth day of June, 1873, the said claimants to said property, rights, and franchises, by an instrument of writing dated that day, signed by all the parties in interest, confirmed and ratified the said agreement of July 15, 1871. Copies of both writings are annexed to the cross-bill. An examination of the copy of the agreement, dated January 15, 1873, shows that John B. Poyntz, who was a party to the writing dated July 15, 1871, did not sign or become a party to that agreement. The allegation of the cross-bill must, however, control in considering a demurrer to that bill.

The forty-first section of the charter of the Kentucky & Great Eastern Railroad Company authorized the president and directors, with the assent of the holders of a majority in value of the stock in said company, to purchase and hold any other railroad in or out of the state.

The cross-bill, however, does not allege that the purchase of the Maysville & Big Sandy Railroad and its property from Wadsworth and associates was made with the assent of a majority in value of the stock in the Kentucky & Great Eastern Railroad Company nor was there any suggestion made in the argument of counsel that such was the fact.

The amendment to its charter, approved March 29, 1872, authorized it to construct its road through the counties of Mason, Lewis, Greenup, and Boyd. It provided, however, that, previous to constructing their railroad east of Maysville, through Mason county and on through the counties of Lewis, Greenup, and Boyd, the Kentucky & Great Eastern Railroad Company should purchase and pay for the Maysville & Big Sandy Railroad, or make such arrangements with its owners as should be satisfactory to each of said owners. If it be assumed that the allegations of the cross-bill are sufficient on demurrer to show that the company made a satisfactory arrangement with the owners of the Maysville & Big Sandy Railroad, the question remains whether or not the mortgage intended to convey the line east of Maysville as future-acquired property.

The mortgage recites that the Kentucky & Great Eastern

Railway Company had the "power to locate, construct, equip, and operate a line of railway within the said commonwealth of Kentucky from the city of Newport, in Campbell county, state of Kentucky, upon, along, and near the southern bank of the Ohio river, in said state of Kentucky, to a point on the state line between the state of Kentucky and West Virginia, at or near Catlettsburg, Boyd county, state of Kentucky;" and in the granting clause conveys "the entire line of the Kentucky & Great Eastern Company's railroad extending from the said city of Newport, in the state of Kentucky, to said point in said state on the state line between the states of Kentucky and West Virginia, as hereinbefore described, as the same is now or may hereafter be located and constructed," etc.

Thus, it will be seen, this mortgage conveyed a definitely-described line, which the company claimed to have then the right to build; hence, as a question of intention and construction, it cannot be that this line—that east of Maysville, along and near the southern bank of the Ohio river—was intended to be, or was, conveyed as future to be acquired property. If, however, it had been intended to be conveyed as future-acquired property, it may be seriously doubted if it would have passed. The mortgaging of future-acquired property by railroad companies is sustained, either upon the ground that it is in the nature of accretions, or that the railroad company has made an executory contract, which, though void in law, will in equity be allowed to become effective when and as the property comes into existence. *Pennock* v. *Coe*, 23 How. 124; *Holroyd* v. *Marshall*, 9 Jurist, 215; *Phillips* v. *Winslow*, 18 Ben. Monroe, 431.

In the case at bar there could be no accretions, because the line itself could not, at the date of the mortgage, be legally conveyed, or be owned, by the Kentucky & Great Eastern Railroad Company; nor could this company make a valid executory contract about this part of the line. It was beyond its corporate authority, and *ultra vires.* It may be seriously doubted whether a mortgage by a railroad company of future to be acquired property ever goes beyond the authority which

the company then has the legal right to acquire. If it embraces property which the company had no corporate authority to acquire at the time of the mortgage, it cannot be sustained, either upon the accretion idea, or that it is an executory contract which equity will enforce in the nature of a specific performance.

It is, however, not necessary to decide this question in this case; but because the company had no right, as far as the cross-bill shows, to acquire the Maysville & Big Sandy Line without the concurrence of the stockholders, and the concurrence is not alleged, and because the Maysville & Big Sandy Line is not intended to be conveyed as future to be acquired property, the demurrers should be sustained.

Order entered sustaining demurrers to cross-bill of Farmers' Loan & Trust Company, and giving leave to amend, and directing "the complainant to redraft his pleadings so as to conform to the equity practice of this court."*

---

*The suit was originally brought in the Mason circuit court of Kentucky, and upon application of the Farmers' Loan & Trust Company was removed to the United States circuit court. The complainant had filed a "petition" under the Kentucky Code Practice.—[REP.